UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FREIDA GAIL DREWERY, an individual,

    Plaintiff,

    v.

MERVYNS DEPARTMENT STORE,

    Defendant.

Case No. C07-5017RJB

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the court on Defendant's Motion for Summary Judgment. Dkt. 17. The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Freida Drewery was hired by defendant Mervyns Department Store on June 25, 1984. Until February of 2006, Ms. Drewery was an hourly Customer Service Associate (CSA) and received benefits. As a CSA, she provided customer service, solicited credit applications, recovered merchandise and prepared written informational notes for other CSAs. At the time of the incidents relevant to this complaint, Ms. Drewery was African-American, over 40, and a Jehovah's Witness. Dkt. 19-3, at 4.

Mervyns' stores are managed by a Store Manager, who oversees store operations and merchandising, and manages the entire team. Each store also has two to five Assistant Managers,

each responsible for managing two to three departments. Every department has a non-exempt Department Supervisor who manages the daily performance of department CSAs with the help of the store's Assistant Manager. All CSAs report directly to a Department Supervisor.

Mervyns' brief sets forth the relevant context for the events that serve as the basis of Ms. Drewery's claims. See Dkt. 17. Although many of the statements in the brief are not supported by documentary evidence that satisfies the requirements of Fed.R.Civ.P. 56(e), Ms. Drewery does not challenge the accuracy of the information. Further, pursuant to Fed.R.Civ.P. 56(a), a party may move for summary judgment "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

Prior to March of 2006, Mervyns' CSAs were classified as either 32-hour benefited, 24-hour benefited, or part-time non-benefited employees. Dkt. 17, at 3-4. 32-hour and 24-hour benefited CSAs were guaranteed their respective hours per week and were eligible to participate in Mervyns' benefits plan. *Id.* Benefits included medical, dental, vacation, personal holidays, sick pay, life insurance and flexible spending accounts. *Id.* The 32-hour and 24-hour benefited positions were the only non-supervisory, non-exempt positions in the store that received benefits. *Id.*

In October of 2005, Mervyns announced that it would be restructuring the stores and eliminating both the 32- and 24-hour benefited CSA positions, effective March 1, 2006. *Id.* On January 16, 2006, Mervyns also announced that it would be closing all of its stores in Oregon and Washington in early 2007. *Id.* At the time of both announcements, Ms. Drewery was a 32-hour benefited CSA in the Tacoma Mall store. *Id.*

Mervyns provided resources and information about COBRA and optional health care coverage to all of the CSAs affected by the benefits change. *Id.* Mervyns also offered all CSAs the opportunity to interview for open Department Supervisor positions, the only remaining non-exempt positions eligible for benefits in the stores. *Id.*

On January 8, 2006, Ms. Drewery applied for the Department Supervisor - Jewelry position. During her interview, Ms. Drewery stated that her main objective in applying for the supervisory position was to maintain the benefits she was projected to lose on March 1, 2006. Dkt. 19, at 4. Other candidates apparently also applied and were interviewed for the position: Debra Cassanova,

Debra Hochbaum, Maranatha Adderley, and Shawniqua Khaleel. *See* Dkt. 19, at 21-22. Mervyns' brief states the age and ethnicity of Ms. Adderley (African-American female, age 21) and Ms. Hochbaum (Caucasian female, age 47); these assertions appear to be corroborated by the EEOC's "Notice of Administrative Recommendation." Dkt. 19-3, at 5. Ms. Hochbaum was selected for the Department Supervisor - Visual position and Ms. Adderley was selected for the Department Supervisor - Jewelry position. Dkt. 19, at 21-22.

Assistant Manager Diane Temer stated that the primary qualification for a Department Supervisor position is the ability to lead, train and motivate a team, while holding individuals accountable. Dkt. 19-5, at 12. According to Ms. Temer, the prospective candidate had to be able to manage difficult customers and challenging situations. *Id.* Ms. Temer stated that she was not looking for specific jewelry department experience in filling the Department Supervisor positions, but rather someone with good leadership skills and solid general merchandising skills. *Id.*

Ms. Drewery was interviewed by Ms. Diane Temer on January 19, 2006, and then by Store Manager Francisca Beaver on January 24, 2006. Ms. Temer stated that, during the interview, Ms. Drewery struggled to articulate responses to questions designed to identify her leadership skills. *Id.* Ms. Temer stated that Ms. Drewery had also previously demonstrated a tendency to become defensive when challenged by difficult customer situations and a reliance upon management assistance rather than an ability to independently handle situations. *Id.*

Ms. Temer stated that, to her knowledge, the only time Ms. Drewery expressed interest in being considered for a management position was in January of 2006, when she applied for the Department Supervisor - Jewelry position. *Id.*

Ms. Drewery testified in her deposition that she was told (it is unclear from the record by whom) that another candidate got the position "because the reason she got the job was because she was more qualified than me." Dkt. 19, at 5, lines 22-24. Ms. Drewery stated that she was told that if another opening came through that "maybe would give it to me or I could get it or apply for it or something like that, to that order." Dkt. 19, at 5, lines 5-7.

Ms. Temer stated that Ms. Adderley, who had worked in the Women's Ready-to-Wear department as a 24-hour benefited CSA, had expressed interest in becoming a Department Supervisor

ORDER
Page - 3

for any department, and had applied for the Department Supervisor - Jewelry position in May of 2005 and in January of 2006. Dkt. 19-5, at 13. Ms. Temer stated that, after Ms. Adderley applied for the position in May of 2005, she was given feedback that she needed to develop her leadership skills before she would be considered for a supervisory position. *Id.* Ms. Temer stated that she worked with Ms. Adderley to develop her leadership skills by providing leadership training, assessing her performance, and providing feedback so that she could reach the level of a Department Supervisor. *Id.* Ms. Temer stated that, at the time Ms. Adderley applied for the Department Supervisor -Jewelry position in January of 2006, she had shown much effort and development in her leadership skills: she continuously challenged herself to try to resolve problems independently, assisted other departments when needed, and made her presence and capabilities known to other associates and leaders in the store. *Id.* Ms. Temer stated that, "[b]ased on my assessment of Ms. Adderley's leadership skills and merchandising experience while working in the Women's Ready to Wear Department, her demonstrated interest and efforts to improve her leadership skills in the past year and her answers to questions during the interview process, Ms. Adderley was the strongest candidate for the Department Supervisor - Jewelry position." *Id.* Ms. Adderley was promoted to Department Supervisor - Jewelry on January 29, 2006.

Plaintiff stated in a declaration as follows:

(1) When Diane Temer interviewed me Freida Gail Drewery on Thursday January 19th 2006 location Tacoma Mall Mervyns Tacoma Washington during the course of the interview she informed me that Francisca Beaver store manager would not like the idea that I did not work on Sundays

(2) On January 26th 2006 Theresa Weileman assistant manager operations approached me and said I asked Francisco Beaver store manager why you did not get the position Francisca said because you do not work on Sundays this conversation took place at Tacoma Mall Mervyns

Dkt. 26.

In a declaration, Ms. Temer stated as follows:

5. As an Assistant Manager, I did not have the authority to make promotional decisions. As a Assistant Manager, I participated in the Department Supervisor promotional process including Ms. Drewery's application for promotion in 2006 but my involvement was limited to conducting interviews and providing input to the Store Manager.

6. At no time did I discuss with Ms. Francisca Beaver, Store Manager of the Tacoma Store, Ms. Drewery's need for religious accommodation in relation to the decision not to promote Ms. Drewery to Department Supervisor - Jewelry position or in relation to the decision to

ORDER
Page - 4

promote her to the Department Supervisor - Shoes position.

7. Ms. Beaver never told me that she would not promote Ms. Drewery to a Department Supervisor position because she could not work Sundays. Ms. Beaver never expressed any concern to me about promoting Ms. Drewery because she could not work Sundays.

8. I did not tell Ms. Drewery on January 19, 2006, or at any other time, that Ms. Beaver would not promote her to Department Supervisor because Ms. Drewery could not work on Sundays or because of her need for religious accommodation.

Dkt. 30, at 1-2.

In a declaration, Ms. Beaver stated as follows:

5. I was responsible for promoting Ms. Drewery to the position of Department Supervisor - Shoes in February of 2006. I also promoted Ms. Maranatha Adderley to the position of Department Supervisor - Jewelry at that time.

6. I did not consider Ms. Drewery's need for religious accommodation and/or the fact that she could not work on Sundays when I determined that she was not the best candidate for the Department Supervisor - Jewelry position.

7. I never had any conversation with Theresa Weileman, Assistant Manager of Operations at the Tacoma, Store, regarding either Ms. Drewery's need for religious accommodation and/or that Ms. Drewery could not work on Sundays. I also never discussed with Ms. Weileman my decision not to promote Ms. Drewery to Department Supervisor - Jewelry. Any statement otherwise is fabricated.

8. Likewise, I never had a conversation with Diane Temer, Assistant Manager at the Tacoma Store, regarding Ms. Drewery's need for religious accommodation and/or that Ms. Drewery could not work on Sundays in any manner related to my decision not to promote Ms. Drewery to the Department Supervisor - Jewelry position.

Dkt. 28, at 1-2.

In a declaration, Natalie Parker, the Employment Law Coordinator for Mervyns in its corporate office, stated that she attempted to contact Ms. Weileman in order to obtain a declaration from her but that Ms. Weileman has not responded to any messages left for her at the phone number she gave Mervyns at the closing of the store, when her employment ended, and that Mervyns has not been able to locate any other contact information for Ms. Weileman. Dkt. 29, at 1.

A statement in the "Notice of Administrative Recommendation" indicates that, on January 29, 2006, a week after Ms. Drewery had been turned down for the Department Supervisor - Jewelry position, a manager position opened in Shoes, Ms. Drewery was offered the job, and she accepted the position on February 4, 2006. Dkt. 19-3, at 5. On February 26, 2006, Ms. Drewery started work as Department Supervisor - Shoes. Dkt. 19, at 29 and 31.

On February 8, 2006, Ms. Drewery filed an EEOC charge alleging age, race and religious

ORDER
Page - 5

discrimination in the promotion process. Dkt. 19-3, at 2. The charge stated as follows:

> I have been employed by Respondent since June 25, 1984, and have over seventeen years of experience in the jewelry department. During my employment tenure I have always performed my assigned duties in a satisfactory manner. On January 19 and January 24, 2006, I was interviewed to fill one of four supervisory vacancies within the store. I was not selected for any of the positions and was told it was because of my availability and that I lacked the desired leadership skills. I later discovered that the store manager stated I was not promoted because I was not available to work on Sundays. As a result, Respondent selected a 21 year old employee with less than 2 years experience to supervise the jewelry department. It is my perception and belief that I have been discriminated against because of my race (Black), age (over 40), and religion.

Dkt. 19-3, at 2.

According to Ms. Beaver, in mid to late March, she observed Ms. Drewery completing a merchandise move during business hours. Dkt. 19, at 29. Ms. Beaver stated that she told Ms. Drewery that she was not supposed to do a large merchandise move during business hours; it was Ms. Beaver's perception that the demeanor between her and Ms. Drewery was calm and respectful. *Id.*

Ms. Beaver stated that, on March 23, 2006, she coached Ms. Drewery on the importance of adhering to the break and meal schedule, so as to not disrupt the Customer Service Leader shift. *Id.*; Dkt. 19-3, at 15-16. Ms. Beaver stated that, "[w]hen Ms. Drewery was addressed by management for her performance, she often denied having been trained or coached on the issue. For these reasons, I requested that Ms. Drewery sign the documented coaching as acknowledgement [sic] that she understood the requirement." *Id.*

The coaching stated as follows:

> Freida is responsible as a member of the Management team to adhere to the break and lunch schedule. Look at the break and lunch schedules on the staffing sheet and check the CSL sheet for CSL assignments. If it looks like there might be a problem getting out on time for a lunch break always call the MOD. The MOD will okay staying later and readjusting the schedules for breaks, lunches and CSL assignments or provide assistance to allow the schedules to stay on time.
>
> ********************
>
> On March 23, 2006 Freida left late to lunch (she was scheduled to go to lunch from 12-1p) and was not available for her CSL shift at 1pm. She did not notify the MOD until she was going to lunch.

Dkt. 19-3, at 15.

Plaintiff responded to the coaching on March 24, 2006, as follows:

> (The reason) I was trying to get the shoe move done. The SM had informed me that the shoe move should have been done or started at a [sic] earlier time. I was trying to make sure that

the shoes move was at an acceptable stopping point so as to not interfere with our customer traffic. The help I had was leaving a 1 pm[.] I did not do this on purpose[.] The SM should have offered more help since we had a (call out)[.] I didn't disrupt the management CSL schedule on purpose. SM knew and could have checked on our progress since I am new in this department and still learning[.] I just was trying to do a good job. Instead of getting a documented coaching I should have been given a warning.

Dkt. 19-3, at 16.

Ms. Beaver responded with an explanation and expectations. Dkt. 19-3, at 17.

On March 23, 2006, Ms. Beaver sent Ms. Drewery a letter, stating that "[t]here is a perception that you may be having a hard time with the paperwork, planning when to get it done and prioritizing paperwork vs. work on the floor." Dkt. 19-3, at 12. The letter addressed time management issues and suggested "some actions you can take to become more skilled at managing your time[.]" *Id.* Those actions included the following:

1. Set goals: nothing manages time better than a goal and a plan. If you don't have goals you can't set priorities.
2. Manage your time efficiently - figure out what you [sic] three biggest time wasters are and reduce them by 50%.
3. Find someone else who is good at time management than you are and partner with him or her to learn his or her techniques. Ask for feedback from others who have commented on your time management skills what they see and what they have observed.
4. Use a planner, notebook or calendar to create to dos and priorities. Meet with you Am to get feedback.

Dkt. 19-3, at 13.

It appears from the record that Ms. Drewery was coached and/or given feedback on a number of issues by various individuals on March 9, 2006, March 15, 2006, March 23, 2006, and April 18, 2006. See Dkt. 19-3, at 9-10. Ms. Drewery and other Department Supervisors received coachings from Roy Powell during the relevant time period. *See* Dkt. 19-4.

On April 10, 2006, Ms. Drewery received coaching by Ms. Temer. The coaching document noted that, on April 4, 2006, Ms. Drewery received a training memorandum with guidelines regarding the opening/closing process for the store; that she failed to review the management schedule; and that she failed to open the store on time. Dkt. 19-3, at 21.

Ms. Drewery testified during her deposition that she was spied upon, apparently by a CSA assigned to her department. Ms. Drewery testified as follows:

Q. Okay. So you've given me three examples of documented coaching that you consider to be harassing.

ORDER
Page - 7

A. Neanna spying on me with Theresa.

Q. When was Neanna spying on you?

A. During the course of working there. I don't know how many times, but the one time I caught her was enough.

Q. When?

A. Theresa would call down there. She called down there that day, and she asked–must have asked her what I was doing. Oh, she's over there. I walked up to the desk, and she was saying, Oh, she's counting red fixtures.
     And then Theresa comes downstairs and proceeds tom give me direction, asking me what am I doing and stuff.

Q. Okay.

A. So–

Q. And that's the one incident in which you caught Neanna?

A. That I know that she was reporting back to her on what I was doing.

Dkt. 19, at 17-18.

Ms. Drewery believes that she should have been trained before coaching was initiated; that she had the skills to qualify for a Department Supervisor position; that Ms. Beaver caused her mental anguish because of the implication that she was not capable of doing the job; that she did not know what the expectations were or what the priorities were; that she was constantly pulled in different directions; and that she experienced emotional stress. Dkt. 20, at 3.

Mervyns' brief states that, on June 15, 2006, plaintiff filed a second EEOC charge, alleging that three coachings and one instance of spying were in retaliation for having filed the first EEOC charge; and that the charge was dismissed by the EEOC on September 22, 2006. Dkt. 17, at 11. The court has been unable to locate these documents in the record. Nonetheless, the alleged retaliation in this complaint relate to incidents that occurred before the second EEOC charge.

Mervyns maintains that, during Ms. Drewery's employment, her request not to be scheduled on Sundays, or Tuesday and Thursday evenings, because of her religious beliefs was honored. *See* Dkt. 19-5.

On January 12, 2007, plaintiff filed an Employment Discrimination Complaint, alleging Mervyns discriminated against her on the basis of her race or color, her religion, and her age. Dkt. 3, at 3. The complaint alleges as follows:

> Despite my tenure I have performed my duties in a satisfactory manner[.] Despite my excellent performance ratings experience and seniority I was denied at this time a promotional opportunity and a less experienced and less qualified employee under the age of forty was promoted[.] Respondents [sic] manager stated that I was not promoted because I was not available to work on Sundays[.] I do not beli[e]ve that similarly situated indivi[d]uals not of my protected class status, race (Black) age (over 40) and Religion are treated the same under similar circumstances.
>
> Also for filing a complaint I was retaliated against[.] The management team watch[ed] my time, scrutinized my work, had a co-worker spy on me, they did documented coaching to justify any termination that may come about waiting for me to dig my own grave[.] They also set up a meeting with all the managers and me by myself to talk over everyone[']s concerns[.] I went from being an excellent employee according to my reviews to being unqualified for a Dept Supervisor in jewelry where I was wor[k]ing without a Dept Supervisor because I was able to work without supervision[.]

Dkt. 3, at 3-4.

## MOTION FOR SUMMARY JUDGMENT

On October 30, 2007, Mervyns filed motion for summary judgment, contending that (1) plaintiff has not stated a claim for race, age or religious discrimination because she experienced no adverse employment action since she was promoted to a Department Supervisor position; she cannot prove that Mervyns promoted a substandard candidate of a different immutable characteristic, since Ms. Adderley is African-American and Ms. Hochbaum is over 40; Ms. Adderley was better suited than plaintiff for the Department Supervisor -Jewelry position; and plaintiff has not shown evidence of pretext; and (2) plaintiff has not stated a claim for retaliation because she experienced no adverse employment action, and because there is no causal link between the EEOC filing and the alleged adverse employment actions. Dkt. 17.

On November 26, 2007, plaintiff filed a response, opposing the motion for summary judgment. Dkt. 20. Plaintiff contends that the coaching she received was done after she filed the EEOC complaint; her evaluations from 2003, 2004, and 2005 show that she had the skills to qualify her for a Department Supervisor position; the March 23, 2006 memorandum from Ms. Beaver caused her mental anguish because it implied that she was not capable of doing the job; she had no clue of what the expectations or priorities were; she was constantly pulled in different directions; she had to leave work because of the emotional stress; she filed a mental stress claim with the Department of Labor and Industries; and Mervyns failed to prevent a hostile work environment in which she felt she could alert management to potential problems and participate in investigations without fear of retaliation. Dkt.

1  20.

2  On November 30, 2007, Mervyns filed a reply, contending that plaintiff fails to establish a
3  prima facie case of discrimination because she has not shown that she was denied a promotion or that
4  she experienced an adverse employment action; that she has failed to contest Mervyns' evidence that
5  candidates of identical immutable characteristics were promoted in her stead; that she has failed to
6  contest Mervyns' position that her religious beliefs were accommodated throughout her employment
7  with Mervyns; and that she has failed to counter Mervyns' legitimate, nondiscriminatory explanation
8  for failing to promote her to the Department Supervisor -Jewelry position. Dkt. 22.  Mervyns further
9  contends that plaintiff has failed to establish any genuine issue of material fact with regard to her claim
10 for retaliation because she has not shown that she suffered an adverse employment action, that the
11 performance feedback she received was discriminatory or improper, or that there is a causal link
12 between that feedback and the filing of the EEOC charge.  *Id.* Mervyns also contends that plaintiff's
13 opposition to the motion for summary judgment was not timely filed and should not be considered.  In
14 the interest of fairness and efficiency, the court has considered plaintiff's response.

## SUMMARY JUDGMENT STANDARD

16 Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and
17 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
18 material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The
19 moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a
20 sufficient showing on an essential element of a claim in the case on which the nonmoving party has the
21 burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of
22 fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the
23 non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
24 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some
25 metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material
26 fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or
27 jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253
28 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th

Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

### 1. Discrimination on the Basis of Race or Color, Age, and Religion

Ms. Drewery contends that she was discriminated on the basis of race or color, age and religion.

Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer– (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

In order to prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs to a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vasquez v. County of Los Angeles*, 307 F.3d 884, n. 5 (9th Cir. 2002). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a basis for its adverse employment decisions. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a

pretext for a discriminatory motive. *Id.* at 804.

*Prima Facie Case.* Mervyns contends that Ms. Drewery has failed to establish a prima facie case because she has not suffered an adverse employment action, and because she has not shown that Mervyns promoted a "substandard candidate of a different immutable characteristic." Dkt. 17, at 13-14.

Mervyns first argues that Ms. Drewery did not suffer an adverse employment action because she was offered and accepted the Department Supervisor - Shoes position shortly after being denied the Department Supervisor - Jewelry position, and, as a result, received an increase in pay and maintained her status as a benefited employee. *Id.* Ms. Drewery has provided no evidence, and has not argued, that the Department Supervisor- Shoes position that she accepted was any less lucrative, or any less desirable in terms of the type of work involved, than the Department Supervisor - Jewelry position.

Ms. Drewery has, however, shown that an adverse employment action occurred for the time period beginning on the day she was denied the Department Supervisor - Jewelry position until the day she began work as a Department Supervisor - Shoes. The record is unclear as to the exact time period that covered the adverse employment action, but it may have been a few weeks to a month.

Mervyns next argues that "Plaintiff cannot establish a prima facie case for either [racial or age discrimination] claim because she cannot prove that Mervyns promoted a substandard candidate of a different immutable characteristic." *Id.* at 14. Mervyns' brief states that in addition to Ms. Drewery and others, two employees, Ms. Adderley and Ms. Hochbaum, were considered for the Department Supervisor - Jewelry position. Ms. Adderley was selected for the Jewelry position, and Ms. Hochbaum was selected for a Department Supervisor - Visual position. According to the EEOC's "Notice of Administrative Recommendation", Ms. Adderley is an African-American, and Ms. Hochbaum is over 40 years of age. Dkt. 19-3, at 5.

It appears that Ms. Drewery has not stated a *prima facie* case of age and race discrimination because she cannot prove that Mervyns promoted a substandard candidate of different immutable characteristics. Nonetheless, because Ms. Drewery has also alleged discrimination based upon her religion, the court will analyze her race and age claims under the entire *McDonnell Douglass* burden-

shifting test. It is not contested that Ms. Drewery was the only applicant for the Department Supervisor - Jewelry position who was a Jehovah's witness and who did not work on Sundays because of her religion. Therefore, Ms. Drewery has stated a prima facie case with regard to her claim of discrimination based upon her religion.

*Mervyn's Nondiscriminatory Reason for Denying Plaintiff's Promotion.* Mervyns has provided a legitimate, nondiscriminatory reason for denying Plaintiff the Department Supervisor - Jewelry position. According to Mervyns, Ms. Adderley was promoted to the Department Supervisor - Jewelry position because she was judged to have better leadership skills than Ms. Drewery had.. Ms. Temer and Ms. Beaver, interviewed Ms. Drewery and both cited weaknesses on the part of Ms. Drewery. *See* Dkt. 19-5. In addition, Ms. Temer stated that Ms. Adderley demonstrated strong leadership skills, as well as a "demonstrated interest" in the position. *Id.*

*Pretext*. Regarding the claims based upon age and race, Mervyns hired two employees, one African-American and one over the age of 40, for supervisory positions during Mervyns' hiring period. Mervyns hired Ms. Drewery to a supervisory position in the Shoes Department shortly after denying her the Department Supervisor - Jewelry position. Ms. Drewery has provided no evidence that Mervyns' promotion of Ms. Adderley instead of Ms. Drewery, based upon the decision that Ms. Adderley's qualifications made her the superior candidate, was a pretext for discriminating against Ms. Drewery on the basis of race and age.

Regarding her claim that Mervyns discriminated against her on the basis of her religion, the record contains several references to this claim. These references are analyzed as follows:

In her complaint, Ms. Drewery claims that, after she applied Assistant Manager position(s), "I was not selected for any of the positions and was told it was because of my availability....I later discovered that the store manager stated I was not promoted because I was not available to work on Sundays." Dkt. 3. This statement in the complaint does not set forth facts regarding what Ms. Drewery was told, who told her, or when she was told about her availability to work on Sundays and its connection to her applications for promotion to Department Supervisor positions. This statement is insufficient to establish that Mervyns' legitimate nondiscriminatory reason for failing to promote Ms. Drewery to the Department Supervisor - Jewelry position was a pretext for discriminating against her

1 on the basis of religion because it does not comply with the requirements of Fed.R.Civ.P. 56(e).

2 On December 5, 2007, the court issued an order, permitting Ms. Drewery to file evidence setting forth facts regarding what she was told, who told her, and when she was told about her availability to work on Sundays and its connection to her applications for promotion to Assistant Manager positions. Dkt. 23. In that order, the court informed Ms. Drewery that she must file any evidence in a form that complies with Fed. R. Civ. P. 56(e). *Id.* In response to that order, Ms. Drewery filed a supplemental declaration, quoted above, as to what Ms. Temer and Ms. Weileman told her. *See* Dkt. 26.

Regarding the statement as to what Ms. Weileman told Ms. Drewery on January 26, 2006, this statement is based upon inadmissible hearsay that does not comply with the requirements of Fed.R.Civ.P. 56(e). Accordingly, Ms. Drewery's statement as to what Ms. Weileman told her is insufficient to establish that Mervyns' legitimate nondiscriminatory reason for failing to promote her to the Department Supervisor - Jewelry position was a pretext for discriminating against her on the basis of religion.

Regarding the statement as to what Ms. Temer told Ms. Drewery during the interview, to the effect that Ms. Beaver would not like the idea that Ms. Drewery did not work on Sundays, is an opinion of Ms. Temer. This statement of what Ms. Temer believed that Ms. Beaver would think does not comply with the requirements of Fed.R.Civ.P. 56(e) and is insufficient to establish that Mervyns' legitimate nondiscriminatory reason for failing to promote Ms. Drewery to the Department Supervisor - Jewelry position was a pretext for discriminating against her on the basis of religion.

In her first EEOC charge, Ms. Drewery alleged that she "later discovered that the store manager stated I was not promoted because I was not available to work on Sundays." Dkt. 19-3, at 2. This statement does not comply with the requirements of Fed.R.Civ.P. 56(e) because it does not set forth facts regarding what Ms. Drewery she was told, who told her, or when she was told about her availability to work on Sundays and its connection to her applications for promotion to Department Supervisor - Jewelry position.

There is no evidence that Mervyns' nondiscriminatory reason for failing to promote Ms. Drewery to the Department Supervisor - Jewelry position was a pretext for discriminating against her

on the basis of race, age, or religion. The Court should grant Mervyns' motion for summary judgment as to Plaintiff's discrimination claims based on race, age, and religion.

**2. Retaliation**

Ms. Drewery contends that Mervyns retaliated against her for filing a complaint.

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

Ms. Drewery has provided no evidence that supports her claim that the coachings or supervision conducted by Mervyns constituted adverse employment actions. Even if the coachings were found to constitute adverse employment actions, Mervyns has provided evidence that there were legitimate, nondiscriminatory reasons for these coachings. Several Mervyns employees provided statements that Ms. Drewery's work habits were lacking in some areas, suggesting that coachings under Mervyns policy were warranted. *See* Dkt. 19-3. In addition, Ms. Drewery has failed to establish a causal link between the coachings and her filing of an EEOC charge. Finally, Ms. Drewery has failed to show that Mervyns proffered legitimate reasons for the coaching were pretext for a discriminatory motive.

The Court should grant Mervyns' motion for summary judgment and dismiss Plaintiff's retaliation claims.

**3. Hostile Work Environment**

In her response to Mervyns' motion for summary judgment, Ms. Drewery claims that Mervyns failed to prevent a hostile work environment.

To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show (1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the

plaintiff's employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d, 634, 642 (9th Cir. 2003). To determine whether conduct is severe and pervasive, the court looks at the context of the alleged harassment to determine its frequency and severity, whether it is physically threatening or humiliating, and the extent to which it unreasonably interferes with the employee's work performance. *Id*. The working atmosphere must be both subjectively and objectively abusive. *Id.*

Although Ms. Drewery did not include a hostile work environment claim in her complaint, she arguable raised the issue in a pleading. The court has liberally construed Ms. Drewery's pro se pleadings. The hostile work environment claim fails because Ms. Drewery has not alleged that she was subjected to verbal or physical conduct of a racial, age-related, or religious nature. The hostile work environment claim should be dismissed.

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 17) is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE** .

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 21st day of December, 2007.

ROBERT J. BRYAN
United States District Judge